CARAWAY, J.,
dissenting.
|,I respectfully dissent from the majority’s view that this community property partition action under La. R.S. 9:2801 (hereinafter the “Statute”) appropriately shifted in midcourse from a summary action to an ordinary proceeding with due process afforded Mark Strickland.
There are three distinct modes of procedure used in Louisiana civil matters: ordinary, summary, and executory. La. C.C.P. art. 851. Summary proceedings are those which are conducted with rapidity, within the delays allowed by the court, and without citation and the observance of all the formalities required in ordinary proceedings. La. C.C.P. art. 2591. Code of Civil Procedure Article 2592 provides a *1287 listing of specific summary actions, but also recognizes that there can be “other matters in which the law permits summary proceedings to be used,” which are not enumerated in the article. La. C.C.P. art. 2592(12); see also, Official Revision Comments (b) to Article 2592 (1960). The legislative intent for the mode of procedure for a given statutory action must be determined. Id.
While the Statute makes a reference at one point to a discretionary trial by ordinary procedure, all indications in the Statute before that reference are for summary proceedings. The Statute states that the partition action may be conducted as an incidental matter to the parties’ divorce proceeding, which itself is conducted through special summary proceedings. See, La. C.C. arts. 102 and 103, and La. C.C.P. arts. 3941, et seq. The principal procedure initially set forth under the Statute is for the parties’ identification and evaluation of all community assets and liabilities in a [¿summary manner. Three outcomes can occur during this phase. The parties’ sworn detailed descriptive lists can be in agreement. If not in agreement, the parties traverse the inventory for any asset or liability or its value in a “trial of the traverses.” The third possibility involves the failure of a party to timely file a sworn detailed descriptive list, so that the other party’s list, after a “rule to show cause” (as opposed to a traversal hearing), is “deemed to constitute” the community assets and liabilities by default. La. R.S. 95801(A)(1)(a).
Finally, there is one last phase of the special community partition action that is not addressed under the Statute with specific procedural detail, but is implicit for the trial court’s ultimate judgment. After the assets and liabilities and their values have been decided through the initial proceedings, the trial court must make “an allocation of assets and liabilities to the parties.” This allocation phase certainly can involve contentious claims between the parties. The Statute identifies some of the causes for contention in this final phase of the proceeding: “the allocation of an asset, in whole or in part, would be inequitable to a party;” a choice between drawing lots, private sales, or licitation sales may be necessary; or the determination for “an equalizing sum of money, either cash or deferred, secured or unsecured” may be required. The Statute suggests the possibility that the trial court can make the allocation/partition in this final phase of the action without further hearings after the initial identification and valuation proceedings. Nevertheless, unless the community is composed of few assets that are easily divisible, the expected procedure in this final phase would ^require a party or both parties to move for the allocation/partition, proposing to the court the party’s suggested division of assets and liabilities and any equalizing payment. In keeping with the allowance for summary proceedings throughout the identification and valuation phase, any final dispute over the parties’ conflicting allocations for assets and liabilities can be tried by a rule to show cause.
Two other observations regarding the Statute. The speed of summary proceedings to divide the community and allow the parties to move on with their economic lives is an obviously beneficial policy. The unusual allowance for a shift to ordinary procedure contained in the final sentence of Subpart (A)(2) of the Statute is for the trial court to choose and direct in its discretion, not the choice for one of the litigants. Arguably, such change in procedure may narrowly apply in the situation where both parties have made appearances in the action, and the trial court elects a pretrial procedure in keeping with ordinary proceedings, both to afford the par *1288 ties time to develop evidence and to frame for trial the issues surrounding numerous properties and liabilities of an economically complex former community.
Clearly, this action began as a summary procedure. Rebecca’s petition made no allegations identifying assets, liabilities, any claim for a reimbursement debt owed her, or any proposed allocation of property. The petition simply sought a court order, and Mark was directed upon issuance of that specific order to act within 45 days by filing a sworn descriptive list “of all property comprising the former community.” The general citation language in the service document accompanying the petition directed Mark |4to answer within 15 days under penalty of default, and therefore was not in harmony with the specific 45-day order he received. No prayer for a money judgment against Mark appeared in Rebecca’s petition. While Rebecca’s sworn descriptive list did detail reimbursement claims for community debts she paid, it is not clear from the record that this descriptive list was served on Mark.
An important principle of notice to the defendant in the default setting of the ordinary action is that “a judgment of default shall not be different in kind from that demanded in the petition.” La. C.C.P. art. 1703. A defendant has a due process right to know what is at stake when a default is threatened. Spear v. Tran, 96-1490 (La.App. 4th Cir.9/18/96), 682 So.2d 267, 271, writ denied, 96-3024 (La.2/7/97), 688 So.2d 500. Mark did not receive such notice in this proceeding alerting him to the possibility for the $10,140.05 money judgment that was ultimately rendered against him by default for Rebecca’s reimbursement claim never mentioned in her petition.
The Statute did provide Rebecca with an opportunity for defaulting Mark based on his inaction. “If a party fails to file a sworn detailed descriptive list timely, the other party may file a rule to show cause why its sworn detailed descriptive list should not be deemed to constitute a judicial determination of the community assets and liabilities.” La. R.S. 9:2801(A)(l)(a). Rebecca did not follow that procedure and serve such rule to show cause on Mark. A rule to show cause, coupled with a motion to adjudicate Rebecca’s proposed allocation of the community and equalizing Inpayment for reimbursement claims, would have given Mark proper notice of the judgment rendered against him. In the absence of that procedure and that notice, the judgment should be reversed.